# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANET VAIL, | : |
| Plaintiff, | : |
| | : **Civil Action No. 13-966 (SRC)** |
| v. | : |
| | : **OPINION** |
| CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY | : |
| Defendant. | : |

**CHESLER,** District Judge

## INTRODUCTION

Plaintiff Janet Vail, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), seeks review of the Commissioner of Social Security Administration's ("the Commissioner") decision denying her application for Social Security Disability Benefits. The parties have agreed that this Court should reverse and remand the decision for further administrative proceedings. The parties disagree, however, as to whether, on remand, this Court should direct the Administrative Law Judge ("ALJ") to address certain errors, and whether this Court should direct the Commissioner to assign the case to a different ALJ. For the reasons set forth in this Opinion, the Commissioner's decision will be reversed and remanded for further proceedings.

## PROCEDURAL HISTORY

On August 28, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 30, 2007, pursuant to Sections 216(i) and 223(d) of the Social Security Act, codified as 42 U.S.C. §§ 416(i) and 423,

1

respectively. Plaintiff also filed a Title XVI application for supplemental security income pursuant to Section 1614(a)(3)(A) of the Social Security Act. Plaintiff alleges disabilities of diabetes, an affective disorder, and alcoholism, as well as an anxiety disorder, neuropathy, obesity, gastroparesis and a heart condition. (Tr. 16; Pl.'s Brief at 11). Plaintiff's requests were denied initially and upon reconsideration. Plaintiff appealed and requested a hearing before an ALJ.

On May 23, 2011, Plaintiff appeared and testified at a hearing before Administrative Law Judge Donna A. Krappa ("ALJ Krappa"). ALJ Krappa issued a decision on September 22, 2011, finding that Plaintiff was not eligible for Social Security disability benefits based upon her disabilities. The following is a summary of the ALJ's findings:

1. As defined in the Social Security Act, Plaintiff was not under a disability at any time from January 30, 2007, the alleged onset date, through September 22, 2011, the date of the ALJ's decision.
2. Plaintiff has not engaged in "substantial gainful activity" during the period between the alleged onset date of her disability and the date of the ALJ's decision.
3. Through the date of the ALJ's decision, Plaintiff did have the following "severe" impairments: diabetes, an affective disorder, and alcoholism (in remission). However, through the date of the decision, Plaintiff did not have an impairment or combination of impairments that matched or medically equaled one of the impairments listed in the Regulations.
4. Plaintiff remains capable of performing the exertional demands of light work, postural and environmental demands of work, as well as mental demands of work.
5. Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms and pain; however, Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms are not credible insofar as they conflict with the residual functional capacity assessment.

(Tr. 16-27). Plaintiff then filed a request for review of the ALJ's decision, but the Social Security Appeals Council denied Plaintiff's request. Pursuant to 42 U.S.C. §§ 1383(c) and 405(g), Plaintiff filed the instant action, seeking review of the Commissioner's decision.

2

## DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.2d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.; Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

3

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

B. **Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for Social Security disability benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairments are so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

C.  **The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At step one, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity, which is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510, .1520.  If a claimant is found to be engaged in such activity, then the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from any severe impairments.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In making this determination, the age, education, and work experience of the claimant will not be considered.  Id.  If a severe impairment is found, the inquiry proceeds to step three.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In <u>Burnett v. Commissioner of Social Security</u>, the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[1] apply and give reasons why those listings are not met or equaled. 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000). In <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." <u>Id.</u> An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." <u>Scatorchia v. Comm'r of Soc. Sec.</u>, 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform her past relevant work, she will not be found disabled under the Act. In <u>Burnett</u>, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the level of capability need to perform the past relevant work.

<u>Burnett</u>, 220 F.3d at 120. If the claimant is unable to resume her past work, and her condition is deemed "severe," but is not listed, the evaluation moves to the final step.

At step five, the burden of proof and production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy

---

[1] Hereinafter, "listing" refers to the list of severe impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§ 404.1512(g), 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled. Id.

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, throughout the five-step process, "must analyze the cumulative effect of the claimant's impairment in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); 20 C.F.R. § 1523. At every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but it need not "adhere to a particular format." See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006). However, in the first four steps of the process, Plaintiff bears the burden of proving that the impairments in combination are severe enough to qualify her for benefits. See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (Plaintiff bears burden of showing how a combination-effects analysis would have resulted in a qualifying disability.)

D. **ALJ Krappa's Findings**

ALJ Krappa followed the five-step sequential evaluation and determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 14). ALJ Krappa held that Plaintiff satisfied the first step because she has not engaged in substantial gainful activity since the onset of her alleged disability on January 30, 2007. (Tr. 16). At step two, ALJ Krappa found that Plaintiff has "the following 'severe' impairments: diabetes, an affective disorder, and alcoholism (in remission) (20 CFR 404.1520(c) and 416.920(c))." (Tr. 16). At step three, ALJ Krappa concluded that none of Plaintiff's severe ailments, or alleged severe ailments, met or medically equaled, alone or in combination, any of the listed impairments in 20 C.F.R. Part 404, Subpart P,

7

Appendix 1. (Tr. 16). The ALJ also determined that, although Plaintiff's diagnosed severe ailments could be reasonably expected to cause the alleged symptoms, Plaintiff's allegations concerning the intensity, persistence, and limiting effects of these symptoms were not credible where they contradicted the assessment of Plaintiff's residual functional capacity. (Tr. 17). ALJ Krappa determined that medical records showed no change in Plaintiff's medical condition despite Plaintiff's claims of reduced daily activities. (Tr. 17). The ALJ thus concluded that Plaintiff "was motivated to decrease the extent of [her] activities during her testimony" because she had already been "denied disability benefits by the Administration on the initial and reconsideration levels," "feels financial pressure," and she knew that "[h]er situation would improve significantly were she to be granted social security disability benefits." (Tr. 26).

At step four, the ALJ found that Plaintiff was capable of handling the exertional, postural, and environmental, and mental demands of light work. (Tr. 17-18). Plaintiff can handle the following exertional demands: (1) lift or carry twenty pounds occasionally and ten pounds frequently; (2) stand or walk for six hours during an eight hour work day; (3) sit for six hours during an eight hour work day if given the opportunity to stand and stretch for three to five minutes every forty-five minutes to one hour; and (4) perform unlimited pushing and pulling within the twenty pound weight restriction. (Tr. 18). Plaintiff can perform jobs with the following postural and environmental demands: (1) no required use of ladders, ropes, or scaffolds; (2) only occasional use of stairs or ramps; (3) only frequent – as opposed to continuous – balancing, stooping, and kneeling; (4) no required crouching or crawling; and (5) no concentrated exposure to undue amounts of dust or known chemical irritants. (Tr. 18). As to mental demands of work, Plaintiff can perform jobs that are: (1) unskilled and repetitive; (2) allow three fifteen minute breaks during the workday at least; (3) are low-stress, meaning that

they require only an occasional change in the work setting during the day, only an occasional change in decision making required during the work day, and if production based, production is monitored at the end of the day rather than consistently throughout it; (4) are self-contained so that Plaintiff is not dependent on other co-workers to perform it; and (5) require only occasional contact with supervisors, co-workers, and no contact with the general public. (Tr. 18). The ALJ concluded that Plaintiff would not be able to perform her past jobs as an animal shelter manager and as a collections clerk. (Tr. 26).

Finally, at step five, the ALJ accepted the vocational expert's testimony on jobs existing in the national economy that Plaintiff is able to perform. These jobs included photocopy operator, ticketer, and folding machine operator. (Tr. 27). The ALJ found that a significant number of these jobs exist regionally and nationally. (Tr. 27). Therefore, Plaintiff was found not disabled within the meaning of the Act.

E.  **Medical Opinions Found Not Credible by the ALJ**

In concluding that Plaintiff was not disabled, ALJ Krappa found Dr. Scimone's medical opinions not credible. Dr. Scimone, a psychologist, has examined Plaintiff every five to six months since June, 2008. The first time Dr. Scimone examined Plaintiff, he diagnosed her with recurrent, severe major depression, bipolar type I, alcohol dependence, and an alcohol-related mood disorder. (Tr. 21). In December, 2008, Dr. Scimone reported that Plaintiff's prognosis was good if she refrained from alcohol use and took her medications as instructed. Dr. Scimone noted that, without the use of alcohol, Plaintiff had limited but satisfactory abilities for semiskilled and skilled work. (Tr. 22). Five months later, Dr. Scimone reported that Plaintiff's alcohol-related disorder was negatively affecting treatment success for her mood disorder. In his opinion, he wrote that Plaintiff's "disorder-related lack of energy and cognitive impairment

seriously limited her ability to complete a normal workday and workweek without interruptions from symptoms and functional impact of her mental disorder." (Tr. 22). In September, 2009, Dr. Scimone's opinion was that Plaintiff was unable to: remember work-like procedures, understand and remember short and simple instructions, concentrate for two hours, maintain regular attendance or be punctual, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, complete a normal workday or workweek without interruptions from disorder-based symptoms, perform at a consistent pace without an unreasonable amount of breaks, or deal with normal work stress. (Tr. 23). Dr. Scimone noted that, even when Plaintiff refrained from alcohol use, "she had the same symptoms but only to a slightly lesser extent, as the symptoms were largely attributed to claimant's primary affective disorder." (Tr. 23). Dr. Scimone's functional assessment reported that claimant's abilities were very limited.

   The ALJ assigned little weight to Dr. Scimone's opinion, finding that his progress notes did not support his final opinion. The ALJ noted that the Regulations require her to consider the amount of evidence in support of a medical opinion. The ALJ found that the progress notes showed essentially normal mental status examinations and substantial progress when Plaintiff did not use alcohol and took her medications as directed. (Tr. 25). The ALJ also found that Dr. Scimone did not take Plaintiff's activities of daily living into consideration.

   Furthermore, the ALJ noted that she needed to assess whether there was support for the medical opinion because of potential incentives for doctors or psychologists to exaggerate a patient's limitations. ALJ Krappa explained the temptation to misrepresent a patient's disabilities, stating:

> [W]hen presented by a patient with a form requiring assessment of a patient's functioning, a doctor or psychologist may be tempted to overstate the severity of a patient's

> limitation(s) out of sympathy for the patients' financial circumstances or the patient's lack of insured medical treatment – both of which could be significantly improved were a patient to be awarded disability benefits. A doctor or psychologist may provide a patient with a favorable disability assessment as a reward for the patient's choosing the doctor/psychologist for treatment. A doctor or psychologist may even overstate a patient's limitations for person[al] gain, as either new or improved health insurance coverage (ie., Medicare as opposed to Medicaid) may enable or assist the patient's return for future treatment. A doctor may provide a favorable disability assessment to a patient in the hopes of encouraging the patient to choose the doctor for future services and/or encourage the patient or the patient's representative to recommend the doctor or psychologist to others. Obviously, medical and mental health professionals, though highly educated and trained, are subject to many of the same biases and stresses as other witnesses. Consideration of these and any other unspecified factors that tend to support or contradict a medical opinion is required under (20 CRF 404.1527(d)(6) and 416.927(d)(6)).

(Tr. 25). Taking these potential biases into consideration, ALJ Krappa concluded that Dr. Scimone's opinion was inconsistent with evidence of Plaintiff's daily activities and objective medical evidence. (Tr. 25). Thus, ALJ Krappa gave little weight to his opinion.

F. **Analysis**

Because the parties have agreed that the Commissioner's decision should be reversed and the case remanded, the only issues which remain are whether, on remand, this Court should direct the ALJ to address certain errors and whether this Court should direct the Commissioner to assign the case to a different ALJ.

1. **Addressing Errors on Remand**

Plaintiff requests that the Court give special instructions to the Commissioner on remand, requiring the Commissioner to address: (1) her failure to assign weight to the medical opinion of Dr. Solomon Miskin, (2) her assignment of little weight to the opinion of Dr. Scimone, and (3) her failure to consider several of the Plaintiff's medical symptoms and medical impairments. (Pl.'s Reply Brief at 3). Plaintiff provides no authority to support the proposition that this Court is empowered to impose such conditions on the Commissioner.

11

### 2. Assignment to Different Administrative Law Judge on Remand

Plaintiff argues that this case must be assigned to a different Administrative Law Judge on remand. (Pl.'s Brief at 22-25). Plaintiff argues that ALJ Krappa was biased because she made baseless speculations about the treating physician's opinions[2] and made comments about the motives of poor claimants. (Pl.'s Brief at 22-27).

The Third Circuit has recognized that ALJs in Social Security hearings are expected to maintain a high degree of impartiality, holding that "the absence in the administrative process of procedural safeguards normally available in judicial proceedings has been recognized as a reason for even stricter application of the requirement that administrative adjudicators be impartial." Hummel v. Heckler, 736 F.2d 91, 93 (3d Cir. 1984). The Court considers an ALJ partial "if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." Id. at 93-94. Thus, litigants may raise claims of an ALJ's bias to be reviewed in proceedings under § 405(g). Id.; Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

In Ventura v. Shalala, the Third Circuit found a Social Security ALJ to be so biased that it directed the Commissioner to assign the case to a different ALJ on remand. 55 F. 3d at 902. The court based its decision on "the conduct of the hearing, not the content of the evidence." Id. at 901. In that case, the Court found that the transcript of the hearing showed that the ALJ consistently interrupted claimant and claimant's representative, demonstrating "the ALJ's offensive and unprofessional conduct." Id. at 902-905. The ALJ's questioning was so "coercive

---

[2] Plaintiff argues that ALJ Krappa used disparaging language toward the treating physicians. (Pl.'s Brief at 27). Plaintiff objects to ALJ Krappa's discussion of biases that doctors often hold because her language is not included in the boilerplate templates of ALJ opinions. (Pl.'s Brief at 27 n. 7). Nevertheless, an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." See Jones v. Barnhart, 364 F. 3d at 505; see also Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006). Because ALJs are authorized to stray from the boilerplate template, Plaintiff's argument lacks merit.

and intimidating, and totally irrelevant to the question of whether the claimant was disabled," that the Court held that claimant was deprived of a full and fair hearing. Id. at 903-04.[3] Here, although the Commissioner concedes that errors of law have been made, there is no evidence of ALJ misconduct that rises to the level described in Ventura. Plaintiff points to no evidence in the transcript of the hearing that shows that the ALJ coerced or intimidated the claimant.

Plaintiff asserts that the ALJ was prejudiced against Dr. Scimone because she granted little weight to his medical opinion and commented on the incentives doctors might have in exaggerating the symptoms of disability claimants. (Pl.'s Brief at 22-23). In evaluating the credibility of treating physicians, the ALJ must consider relevant conflicting evidence and must provide reasons for discounting evidence. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009) (quoting Plummer, 186 F.3d at 429) (internal citation omitted). "[T]he ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." Id.

Here, the ALJ considered relevant conflicting evidence in finding that Plaintiff's progress notes and activities of daily living did not support Dr. Scimone's medical opinion. (Tr. 25). While the progress notes showed that Plaintiff's condition significantly improved when she refrained from alcohol use and took her prescribed medications, Dr. Scimone reported that her symptoms were only "slightly" less severe when she refrained from alcohol. (Tr. 23-25). Furthermore, while Plaintiff herself reported that she was able to live alone, leave her home, pay bills, prepare simple meals, clean, shop for groceries, talk on the phone, and read, Dr. Scimone's functional assessment of the Plaintiff's skills was very restrictive. (Tr. 25-26). These reasons

---

[3] The Third Circuit has construed Ventura narrowly, refusing to apply it when the ALJ does not clearly demonstrate such offensive and unprofessional conduct. See Valenti v. Comm'r of Soc. Sec., 373 F. App'x 255, 258 (3d Cir. 2010) (holding there was no evidence of bias or misconduct on the part of the ALJ because there was no coercive, irrelevant, and intimidating questioning as there had been in Ventura).

support the ALJ's determination to assign little weight to Dr. Scimone's opinion.  ALJ Krappa's comments on the motives of treating physicians in general, however, do not constitute evidence to support the ALJ's credibility determination regarding Dr. Scimone.  These general comments are both unpersuasive and irrelevant to the case at hand.  This Court remands the case for further evaluation of Dr. Scimone's opinion.  Nevertheless, this Court need not direct the Commissioner to assign this case to a different ALJ because the ALJ did not show bias against a specific party or demonstrate any interest in the outcome of the case.  While the ALJ must reconsider her credibility determination of the treating physician on remand, there is no sign that Plaintiff's right to a full and fair hearing was violated in the initial hearing.

     Plaintiff asserts that ALJ Krappa is biased against poor claimants because of her conclusion that Plaintiff "was motivated to decrease the extent of [her] activities during her testimony" because she had already been "denied disability benefits by the Administration on the initial and reconsideration levels," "feels financial pressure," and she knew "[h]er situation would improve significantly were she to be granted social security disability benefits."  (Tr. 26; Pl.'s Brief at 25).  It is helpful to consider the facts of the instant case in comparison to <u>Grant v. Commissioner</u>, in which a class of social security disability claimants brought an action against the ALJ who denied them benefits.  111 F. Supp. 2d 556, 557 (M.D. Pa. 2000).  The plaintiffs in that case presented overwhelming evidence of the ALJ's bias from a compilation of transcripts, deposition testimony from the ALJ's co-workers, and special hearings.  <u>Id.</u> at 557-58.  This evidence revealed that the ALJ thought it was too easy to obtain Social Security benefits and referred to claimants as "no-goodniks," especially if the claimant was "black, Hispanic, a poor white, a union member, obese, allegedly mentally impaired, a workmen's compensation claimant, a controlled substance addict, a Department of Welfare employee, or an accident

victim." Id. at 559.  If a claimant fit into one of those categories, the ALJ often wrote the term "no-goodnik" on the instruction sheet to the decision writer, and found the claimant not credible. Id.  The court determined that the ALJ was biased and remanded the plaintiffs' cases.

Here, Plaintiff has no evidence that the ALJ discriminated against her because of being poor.  Although the Commissioner concedes that the ALJ must reassess her credibility judgment of the Plaintiff, there is no evidence that shows the ALJ was biased against the Plaintiff or a particular class of claimants.  Credibility determinations are uniquely the province of the finder of fact.  ALJ Krappa determined that Plaintiff's claims of reduced daily activities were not credible because the medical evidence showed no change in Plaintiff's medical condition.  (Tr. 26).  Plaintiff has not persuaded this Court that what appears to be an ordinary credibility determination is in any way similar to the misconduct in Ventura, which supported requiring the Commissioner to assign the case to a different ALJ.  Plaintiff has pointed to no evidence that she suffered from bias or prejudice, and Plaintiff's requests for the Court to impose conditions on the Commissioner on remand is denied.

## CONCLUSION

For the reasons stated above, this Court finds that the ALJ's decision is reversed and remanded without specific instructions.

                                        s/ Stanley R. Chesler
                                        STANLEY R. CHESLER, District Judge

Dated: June 12, 2013